**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JARDAIA MASON OWENS, | ) | CASE NO. 1:20-CV-01242 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jardaia Mason Owens (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner), [1] denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

## I.      Procedural History

On October 20, 2017, Plaintiff filed her applications for DIB and SSI, alleging a disability onset date of July 31, 2017. (R. 10, Transcript (Tr.) 296-97; 303-08). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 218-24; 227). Plaintiff participated in the hearing on April 8, 2019, was represented by counsel, and testified. (Tr. 130-49). A vocational expert (VE) also participated and testified. (*Id*.). On May 3, 2019, the ALJ found Plaintiff not disabled. (Tr. 8-23). On April 1, 2020, the Appeals Council (AC) denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 15).

## II.     Evidence
### A.      Relevant Medical Evidence[2]

#### 1.      Treatment Records

On July 7, 2017, Plaintiff was diagnosed with chronic congestive heart failure. (Tr. 411). On July 31, 2017, Plaintiff visited with her treating physician, Van Warren, M.D., reporting "headaches, pain all over." (Tr. 595). Dr. Warren noted Plaintiff's history of lupus and cardiomyopathy and found that Plaintiff had normal range of motion in her arms and legs, and mild tenderness in her knees and hips. (Tr. 595). Dr. Warren prescribed medication for her symptoms. (Tr. 595).

In August 2017, Plaintiff was admitted to the hospital for heart failure. (Tr. 529). A chest

---

[2]   The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

X-ray showed prominent interstitial lung markings. (Tr. 424). Plaintiff underwent a psychiatric consultation while in the hospital, resulting in an impression of major depressive disorder. (Tr. 417, 422). Upon discharge, Plaintiff's diagnosis was acute on chronic combined systolic and diastolic heart failure. (Tr. 415).

On August 7, 2017, Plaintiff underwent a mental health assessment with Jen Lemmer-Graber (LSW, CDCA). (Tr. 454). Plaintiff reported that she was struggling with health issues and her symptoms were: feeling down, weak, tired, racing thoughts, and memory issues. (Tr. 455). The assessment was major depressive disorder. (Tr. 454). She was prescribed medications and told to follow up in four weeks. (Tr. 455). At her August 21, 2017 counseling session, Plaintiff reported extreme physical and emotional exhaustion to therapist Andrea McMuldren. (Tr. 444). On September 8, 2017, Plaintiff reported that she quit her job because of health issues. (Tr. 448). On September 28, 2017, Plaintiff attended a psychiatric follow-up with Nurse Practitioner Timea Turoczi regarding her medications and reported increased sadness, but that her irritability had improved. (Tr. 460). At her September 29, 2017 counseling appointment, Plaintiff reported that she was in a lot of pain and was very stressed. (Tr. 453).

On October 17, 2017, Plaintiff attended a consultation with Pierre Lavertu, M.D., regarding a thyroid goiter. (Tr. 535). A CT scan and ultrasound showed mild enlargement of both sides of the thyroid, although it was noted that the growth was only slight since 2012 and there was no evidence of compression (*Id*.). On December 21, 2017, Dr. Lavertu surgically removed Plaintiff's thyroid. (Tr. 560).

In January 2018, an echocardiogram ordered by her cardiologist, Chantal ElAmm, M.D., showed an estimated 40% ejection fraction in the left ventricle, mild to moderately decreased left ventricle function, and impaired relaxation pattern of the left ventricle. (Tr. 658). Also, in January

2018, Plaintiff complained of generalized pain to Dr. Warren, who noted that she had mild tenderness in her abdomen, normal range of motion in her arms and legs, tenderness in her left thigh, and normal strength in her hips. (Tr. 667).

At counseling on February 8, 2018, Plaintiff indicated that her mood fluctuated and attributed some of it to thyroid issues. (Tr. 697). She reported that she was less irritable and more tolerant of people but continued to have low energy and fatigue. (Tr. 697). Dr. ElAmm conducted a stress test on Plaintiff in February 2018, wherein she developed shortness of breath, and a stress ECG showed sinus tachycardia, though resting ECG showed normal sinus rhythm. (Tr. 653).

In April 2018, Plaintiff treated with Dr. ElAmm and denied chest pain, as well as shortness of breath at rest or on mild exertion and reported that she had no leg edema. (Tr. 822). Her heart failure was stable. (Tr. 822). Plaintiff's physical examination was normal. (Tr. 827).

Plaintiff underwent gastric sleeve surgery in May 2018. (Tr. 812). In July 2018, Plaintiff followed up on her thyroid issues with Nadine El Asmar, M.D., and reported that she had been experiencing more joint pain and was not taking her lupus medication. (Tr. 786).

Also in July 2018, Plaintiff treated with Dr. ElAmm and denied chest pain, palpations, or shortness of breath, and reported that her fatigue had improved. (Tr. 812). Plaintiff reported to that she lost 45 pounds and was able to walk at a steady pace without experiencing severe dyspnea. (Tr. 812). Plaintiff reported that she regularly exercised. (Tr. 812).

On December 17, 2018, Plaintiff saw optometrist Robert Cherne, O.D., reporting pain around her eyes. (Tr. 761). Plaintiff reported that she was leaving work because of blurriness in her vision. (Tr. 761). Dr. Cherne prescribed medication for pain around Plaintiff's eye. (Tr. 763). In January 2019, Dr. Cherne prescribed a new medication to treat Plaintiff's continuing pain around her eye. (Tr. 759).

On February 13, 2019, Plaintiff treated with Dr. Warren for pain on the left side of her body. (Tr. 839). Plaintiff reported pain with walking or climbing as well as shortness of breath. She also reported improvement in swelling since having gastric sleeve surgery and significant weight reduction. (Tr. 839). Dr. Warren opined that Plaintiff would need work modification so that she does not have to stand or walk for prolonged periods, to limit push/pull or lift heavy objects, and avoid repetitive climbing. (Tr. 839).

On February 21, 2019, Plaintiff followed up with Dr. ElAmm. (Tr. 802). Plaintiff complained of increased fatigue and reduced exertional tolerance, worsening orthopnea, and occasional lower extremity edema. (Tr. 802). Dr. ElAmm noted that Plaintiff was not adherent with her medication regime, did not need assistance with sitting, standing, or walking, and was not using an assistive device. (Tr. 802). Plaintiff reported that she exercised regularly. (Tr. 802).

## 2. Medical Opinions Concerning Plaintiff's Functional Limitations

In November 2017, Courtney Zeune, Psy.D., state agency psychological consultant, reviewed Plaintiff's records. (Tr. 158-59). Dr. Zeune opined that Plaintiff had a mild limitation in understanding remembering and applying information and a moderate limitation in interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself. (Tr. 159). In March 2018, state agency psychologist Aracelis Rivera, Psy.D., reviewed Plaintiff's records and concurred with Dr. Zeune's opinion. (Tr. 192-93).

On January 8, 2018, Plaintiff underwent a consultative examination with Eulogio Sioson, M.D. (Tr. 568-572). Dr. Sioson noted that Plaintiff's stated medical problems included lupus, neck/back/joint pains, heart problems, asthma, thyroid problems, and mental disorder. (Tr. 568). On examination, Dr. Sioson noted that Plaintiff walked normally, could get up and down from the examination table, could heel/toe walk and rise from a ¼ squat with hip pain. (Tr. 569). Dr. Sioson

5

noted no tenderness in Plaintiff's extremities but pain on range of movement. (Tr. 569). Plaintiff could grasp and hold without pain in her hands or wrists. (Tr. 569). Plaintiff reported moderate neck and lower back tenderness. (Tr. 569). Dr. Sioson opined that Plaintiff could perform a range of work where she sat most of the time, occasional standing and walking, occasional lifting and carrying up to ten pounds, and could do handling and manipulation but not continuously. (Tr. 569). Further, Dr. Sioson opined that Plaintiff could not work in extreme heat, cold, dusty, or poorly ventilated environments. (Tr. 569).

On January 25, 2018, William Bolz, M.D., state agency medical consultant, reviewed Plaintiff's records. (Tr. 161-63). Dr. Bolz opined that Plaintiff could occasionally lift and/or carry 20 pounds, stand and/or walk and sit six hours in an eight-hour workday, and was unlimited in pushing and/or pulling. (Tr. 161). Dr. Bolz further opined that Plaintiff could never climb ladders, ropes, and scaffolds; could occasionally climb ramps and stairs, and stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to extreme cold and heat, wetness, humidity, hazards, fumes, odors, dusts, gases, and poor ventilation. (Tr. 161-62). In March 2018, state agency medical consultant Mehr Siddiqui, M.D., reviewed Plaintiff's medical records and concurred with Dr. Bolz's opinions. (Tr. 195–96).

On February 13, 2019, Dr. Warren completed a medical source statement. (Tr. 775-76). Dr. Warren opined that Plaintiff could lift ten pounds occasionally and five pounds frequently; stand four hours total in a workday, and one hour without interruption; rarely climb, balance, stoop, crouch, kneel, or crawl; occasionally reach, push, pull, or manipulate; and that she was restricted from working around heights, moving machinery, with temperature extremes and with pulmonary irritants. (Tr. 775–76). Dr. Warren further opined that Plaintiff would need to alternate between standing, sitting, and walking; she experienced moderate pain that would cause absenteeism;

6

would need to elevate her legs at 45 degrees; and would require two hours of unscheduled breaks during a workday. (Tr. 776).

### B.    Relevant Hearing Testimony

At the April 8, 2019 hearing, Plaintiff testified as follows:

- On an average day, she woke by 6:00 a.m. after a restless sleep. (Tr. 134). She woke her kids for school and ensured they got on the bus ; and laid back down. (Tr. 134). She got her kids off the school bus by 3:00 p.m. If she was not in pain, she made dinner. Otherwise, she bought food that could be microwaved so her children or mother could prepare the meal. (Tr. 135).

- She rated her pain as a six out of ten at the hearing. Her mother and aunt helped her perform household chores. (Tr. 135). Her children did laundry; family helped with grocery shopping and cooking and took care of her children when she could not. (Tr. 143).

- Plaintiff stopped working in February of 2019, due to pain in her legs and joints, as well as vision issues. (Tr. 138). She experienced breathing trouble when she overexerted herself, due to her heart condition. (Tr. 138). Her heart medication was increased. (Tr.139).

- Her legs swelled and joints locked up due to lupus. (Tr. 139). She explained that she struggled with the stairs in her home. (Tr. 140). She could only stand five to ten minutes, and her hands "lock up" three or four times a day. (Tr. 140-41).

- Plaintiff had about four bad days a week (Tr. 143).

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> This person is female, 28 years of age, high school education, same work background as Ms. Owens. This person can lift/carry 20 pounds occasionally, 10 pounds frequently, can stand/walk 4 out of 8, 1 hour at a time, can sit 8 out of 8, push/pull and foot pedal would both be frequent. This person can occasionally use a ramp or stairs, never a ladder, rope or a scaffold, can frequently balance, occasionally stoop, kneel, crouch or crawl. There are no manipulative limitations, no visual deficits, no communications limits; however, this person should avoid high concentrations of heat, cold, wetness, humidity, smoke, fumes, pollutants and dust. This person must avoid entirely dangerous machinery and unprotected heights. Additionally, this person can do no complex tasks, but can do simple,

routine tasks. The tasks should be low stress and I define that mean no high production quotas or piece rate work. And finally, this person should have only superficial interpersonal interactions with the public and coworkers. And I define superficial to mean that no arbitration, confrontation, negotiation, supervision or commercial driving.

(Tr. 145). The VE testified that such an individual could not perform Plaintiff's past work. (Tr. 146). The VE further testified that this individual could perform work as a mail clerk (light exertion, unskilled, SVP 2, 50,000 jobs exist in the national economy), office helper (light exertion, unskilled, SVP 2, 52,000 jobs exist in the national economy), and information clerk (light exertion, unskilled, SVP 2, 48,000 jobs exist in the national economy). (Tr. 146).

The ALJ posed a second hypothetical, "the only difference between the first and second is the exertional area and it is now stand/walk two out of eight, sit eight out of eight[.]" (Tr. 146). The VE testified that such a hypothetical could work as a beverage order clerk (sedentary exertion, unskilled, SVP 2, 17,000 jobs exist in the national economy), document preparer (sedentary exertion, unskilled, SVP 2, 25,000 jobs exist in the national economy), and charge account clerk (sedentary exertion, unskilled, SVP 2, 30,000 jobs exist in the national economy). (Tr. 147).

Plaintiff's counsel posed the following hypothetical question to the VE:

[A] hypothetical individual who is limited to lifting ten pounds occasionally and five pounds frequently, who standing and walking are limited to four hours out of an eight-hour day, one hour without interruption and sitting is limited to six hours a day, who is limited to occasional reaching overhead, occasional push and pull with the upper extremities, occasional fine and gross manipulation. This individual should be precluded from working around heights, moving machinery, temperature extremes[.] … And then this individual would also be limited to no fast pace or no strict production demands, occasional and superficial interaction with others and is capable of infrequent changes in a routine work setting.

(Tr. 147). According to the VE, such an individual could not perform Plaintiff's past work, and there were no other jobs available. (Tr. 148). The VE testified that if either of the hypothetical individuals posed by the ALJ needed an additional two hours of break throughout the day, those

individuals could not perform the previously identified jobs. (Tr. 148). Further, the VE testified that if either of the hypothetical individuals posed by the ALJ needed to miss work two or more times a month on a regular and ongoing basis, no identifiable jobs were available. (Tr. 148).

### III.  Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§

404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.     Summary of the ALJ's Decision

The ALJ made the following factual and legal findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since July 31, 2017, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.).*

3. The claimant has the following severe impairments: congestive heart failure, obesity, thyroid disease, asthma, unspecified arthropathies, and affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the limitations that follow. The claimant is able to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally. She is able to stand and/or walk for one hour at a time and for two hours total in an eight-hour workday, and can sit for eight hours in an eight-hour workday. She can frequently push, pull, and operate foot pedals. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She is limited to frequent balancing. The claimant can occasionally stoop, kneel, crouch, and crawl. She has no manipulative, visual, or communication limitations. The claimant should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, smoke, fumes, pollutants, and dust. She should have no exposure to hazardous machinery and unprotected heights. The claimant is limited to simple, routine tasks and must avoid complex tasks. She is limited to low-stress tasks, defined as no high production quotas

or piece rate work. The claimant is limited to superficial interpersonal interaction with the public and coworkers, with superficial defined as no arbitration, confrontation, negotiation, or supervision. She may not engage in commercial driving.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on *** 1991 and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-23).


## V.    Law and Analysis

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence,

regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

In her sole assignment of error, Plaintiff contends that the ALJ erred in concluding that she could perform work on a sustained basis at Step Five of the sequential analysis. (R. 13, PageID# 921). Plaintiff's assertion consists of two separate arguments: 1) that the ALJ erred in rejecting the opinion of her treating rheumatologist, Dr. Van Warren; and 2) that the ALJ erred in assessing her subjective symptoms pursuant to Social Security Ruling 16-3p and 20 C.F.R. §404.1529. (*Id.*).

### 1.    ALJ's Analysis of Dr. Van Warren's Opinion

Plaintiff contends that the ALJ erred in finding that she was capable of sedentary work. Specifically, she contends that the ALJ erred in rejecting the opinion of her treating rheumatologist, Dr. Van Warren. (R. 13, PageID# 921).

For claims filed before March 27, 2017, the "treating source rule" applied, which generally required the ALJ to provide controlling weight to the well-supported opinions from treating physicians. However, the Social Security Administration (SSA) has amended the regulations for

12

evaluating medical opinions in connection with claims filed after March 27, 2017, as in the instant case. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Notably, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).

An ALJ's decision, however, must "articulate how he considered the medical opinions and prior administrative medical findings" in adjudicating the claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c). The ALJ is required to explain how the decision considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss the other factors. 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, the regulations state "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, the ALJ addressed Dr. Warren's medical source statement as follows:

> The opinion of the claimant's treating physician, Dr. Van Warren, is somewhat persuasive. Dr. Warren opined in February 2019 that the claimant could lift 10 pounds occasionally and five pounds frequently, could stand/walk for one hour at a time and up to four hours a day, and had environmental limitations (15F). However, he additionally opined the claimant could rarely engage in postural activities, occasionally engage in reaching, push/pull, and manipulation, would need to elevate her legs, and required two hours of additional rest each day (15F). Dr. Warren's opinion is not well supported by or generally consistent with the evidence of record, which generally showed improvement with compliant care. For example, her symptoms were described as "stable" in April 2018 with no chest pain, shortness of breath, or edema (18F:23). She was noted to be "doing well" then and in July 2018 (17F:2,9; 18F:13). She reported the ability to walk a steady pace without severe dyspnea (18F: 13). Though her ejection fraction had decreased in February 2019, it was noted that it had been variable throughout the years (18F:3). Furthermore, Dr. Warren's written opinion from March 2019 is less restrictive than his February 2019 opinion (19F:1). As such, I find his February 2019 opinion to be somewhat persuasive, and his March 2019 opinion to be more persuasive.

(Tr. 21). Plaintiff does not contest the accuracy of the records cited by the ALJ. Rather, Plaintiff contends that the ALJ cited to the wrong records.

Plaintiff contends that the records which the ALJ relied upon when assessing the supportability and consistency of Dr. Warren's opinion do not "pertain to [P]laintiff's lupus but rather relate to [P]laintiff's cardiac condition and thyroid issues." (R. 13, PageID# 922). The Commissioner counters, asserting that "there is no requirement that the ALJ was limited to considering only evidence related to Plaintiff's lupus in evaluating the consistency of Dr. Warren's opinion with the record. *See* 20 C.F.R. §404.1520c." (R. 15, PageID# 939). The Commissioner further argues that Dr. Warren's opinion was not based solely on Plaintiff's lupus, but also on her congestive heart failure, as well as her complaints of lower back, knee, and shoulder pain. (R. 15, PageID# 939).

The ALJ concluded that Dr. Warren's opinion was "not well supported by or generally consistent with the evidence of record." (Tr. 21). Before rendering this conclusion, the ALJ's

decision provided an extensive detailed discussion of Plaintiff's medical records. In particular, the

ALJ provided as follows:

> The claimant has a history of evaluation and treatment for several physical impairments. The claimant has been diagnosed with chronic systolic congestive heart failure (lF:8). She admitted that she did not seek cardiac treatment for two or three years due to feeling her cardiologists and anesthesiologists were unkind to her after her last child was born, and she reported she returned to care in July 2017 because her cardiac symptoms became 'unbearable' (4F:17). Imaging in July 2017 showed no evidence of atherosclerosis; however, it did reveal a mildly dilated left ventricle, mild bilateral atria dilation, and a left ventricle ejection fraction of 36% (1F:5). The claimant reported generalized musculoskeletal pain and fatigue that month; however, physical examination showed only mild tenderness in the knees and hips and no peripheral edema (7F:21).

> In August 2017, the claimant complained of shortness of breath and fatigue (4F:14). It was noted the amount of fluid in her body had significantly improved since she restarted treatment (1F:11). A chest x-ray showed stable mild enlargement of the cardio mediastinal silhouette (1F:22), and an echocardiogram showed moderately decreased left ventricular systolic function and hypo kinesis of the left ventricle with minor regional variations (1F:24). Her left ventricular ejection fraction was estimated between 35-40% (4F:15).

> The claimant complained of pressure and discomfort in her throat, voice loss, and feeling she needed to clear her throat in October 2017 (5F:1). A CT scan and ultrasound showed some mild enlargement of both sides of the thyroid; however, it was noted to be only slight growth since 2012 and there was no evidence of compression (*Id.*). In December 2017, the claimant underwent thyroid removal surgery (5F:26-27). An echocardiogram that month showed an estimated 40% ejection fraction in the left ventricle (8F:18).

> The claimant reported some pain and numbness in the left lateral thigh in January 2018; however, she displayed normal range of motion and muscle strength (7F:1). A chest x-ray that month showed continued mild cardiomegaly and her symptoms were noted as stable even though she admitted variable compliance with her treatment (7F:6; 8F:14). The claimant developed shortness of breath during a stress test in February 2018, and stress ECG showed sinus tachycardia, though resting ECG showed normal sinus rhythm (8F: 13). No EKG abnormalities were noted during a sleep study in March 2018 (16F:4).

> In April 2018, the claimant's heart failure was described again as "stable" and she denied chest pain/pressure, shortness of breath at rest or during mild exertion, and leg edema (18F:23). It was noted she was "doing well" and her recent lab tests were at goal (l7F:14). The claimant underwent gastric sleeve surgery in May 2018

(18F:13). In July 2018, the claimant admitted she had not been taking her lupus medication or her diuretics and reported joint pain and increased swelling; however, it was noted she was doing well (17F:2, 9; 18F:13). She subsequently reported the ability to walk a steady pace without severe dyspnea (18F:13). She denied chest pain and palpitations and reported she used fewer pillows to sleep at night (l 8F: 13).

She did not see her cardiologist again until February 2019, when she reported increased fatigue, reduced exertional tolerance, worsening orthopnea, and "occasional" lower extremity edema (18F:3). An echocardiogram showed a moderately dilated left ventricular cavity size, a 30% estimated left ventricular ejection fraction, hypo kinesis of the left ventricle, and mild to moderate tricuspid regurgitation (*Id.*). It was noted the claimant was not adherent with her medication regimen (*Id.*). Physical examination was unremarkable at that time (18F:9).

In March 2019, the claimant presented with complaints of left sided body pain while working, pain in her lower extremities with walking and climbing, and shortness of breath with pushing, pulling, lifting, and walking (19F:l). She noted significant improvement in swelling since bariatric surgery and weight reduction (*Id.*).

The claimant participated in a consultative physical examination in January 2018, at which time she reported chest pain, shortness of breath during exertion, and joint pain (6F:l). She reported the ability to do "limited" driving, light cleaning, cooking, dishes, and grocery shopping. She reported the ability to dress, groom, and shower, but reported all were performed slowly (6F:1). During the examination, the claimant was able to walk without assistance, perform heel/toe walking, rise from ¼ squat, and get up and down the examination table (6F:2). She complained of pain during range of motion of her extremities, but displayed no tenderness or edema (*Id.*). She was able to grasp and manipulate with each hand and did not complain of pain (*Id.*). She complained of neck and lower back tenderness; however, she displayed normal sensation, 4/5-5/5 muscle strength, and no atrophy (6F:2-3). The consultative examiner, Dr. Eulogio Sioson, opined the claimant displayed no overt signs of congestive heart failure and no inflammatory changes in the joints (6F:2). He opined she would sit most of the time at work, could occasionally stand and walk, occasionally lift and carry up to 10 pounds, could handle and manipulation (but not continuously), and should not work in extreme heat, cold, dust, or poorly ventilated areas (6F:2).

(Tr. 18-19).

The court finds that the ALJ's decision provided a thorough discussion of Plaintiff's medical evidence and analyzed Dr. Warren's opinion under the pertinent regulatory factors of supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff does not take issue with the ALJ's

discussion of the medical evidence, nor does she provide any support for her assertion that the ALJ was limited in the records he could consider when assessing medical opinions. Further, Plaintiff does not point to any evidence to support Dr. Warren's opinion. As is clear from the ALJ's recitation of the medical evidence, Plaintiff's impairments are interrelated. Therefore, it is necessary to view the medical evidence as a whole. Having considered the parties' arguments and governing law, the court finds no error in the ALJ's consideration of the doctor's opinions and the stated reasons for discounting them. 20 C.F.R. § 404.1520c(a),(b),(c). Accordingly, this argument is without merit.

### 2.  ALJ Analysis of Plaintiff's Credibility (SSR 16-9p)

Plaintiff contends that the ALJ erred in analyzing her statements regarding her symptoms. (R. 13, PageID# 923). Specifically, she contends that the ALJ misconstrued the extent of her daily activities. (*Id*.). The Commissioner contends that the ALJ properly considered Plaintiff's subjective complaints and incorporated them into the RFC. (R. 15, PageID# 942).

In making a disability determination, the ALJ considers all the claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The ALJ] will consider all of [the claimant's] statements about [the claimant's] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work." 20 C.F.R. §404.1529(a).

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929; *Wyatt v. Sec'y of Health &*

*Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability")). However, a claimant's statements as to "pain or other symptoms will not alone establish that [she is] disabled...." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). An ALJ conducts a two-part analysis to evaluate a claimant's subjective statements of pain when the symptoms, rather than that underlying condition, form the basis of the disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3P, 2016 SSR LEXIS 4 at *5, 2017 WL 5180304, at *3-*4. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment [MDI] that could reasonably be expected to produce the claimant's symptoms." *Id*. (citing 20 C.F.R. § 416.929(a)).

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's alleged symptoms "based on a consideration of the entire case record." *Id.*

Social Security Regulation 16-3p lists the factors relevant to the ALJ's determination at the second step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2016 SSR LEXIS 4 at *19, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360,

2017 U.S. App. LEXIS 19463, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017). While an ALJ is not required to explicitly address all these factors, the ALJ should sufficiently articulate specific reasons for the credibility determinations so that the claimant and any subsequent reviewer can "trace the path of the ALJ's reasoning." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ summarized the claimant's allegations as follows:

The claimant has alleged that she is unable to work due to depression and various physical impairments (3E/2). She has alleged that she cannot work due to difficulty standing for long periods, shortness of breath when going up stairs, low energy, fast heart rate, and trouble sleeping (5E/1). At the hearing, the claimant stated if she sits more than 25-30 minutes at a time, she has to get up and move around for 5-10 minutes to keep her blood circulating. She testified that she underwent bariatric surgery but stated her lupus and heart have not been under control since the surgery and she has no energy. The claimant reported she was working but stopped due to pain and could not stand for longer than 5-10 minutes at a time.

(Tr. 18).

In conducting the above analysis, the ALJ stated:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the claimant's alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.*).

To support this conclusion, the ALJ's decision discussed and analyzed the records regarding Plaintiff's physical impairments, as set forth above. (*see*, Tr. 18-19). In addition, regarding Plaintiff's mental impairments, the ALJ explained:

As to her mental impairments, the claimant has been treated for depression. She underwent a psychiatric evaluation in August 2017 when she reported feeling overwhelmed with social and life stressors (lF:14). At that time, she reported getting dressed took her a long time (*Id.*). Though she presented as tearful at times,

she was calm, cooperative, and pleasant and displayed good hygiene and good eye contact (lF:16). She demonstrated organized and goal directed thought processes, logical associations, and normal memory, attention, and concentration (lF:16). She was diagnosed with major depressive disorder and was prescribed medication (lF:19).

The claimant began counseling. She continued to report symptoms such as feeling down, weakness, tiredness, racing thoughts, and memory difficulty (2F:21). She noted some improvement in sadness and irritability in October 2017 (2F:27). In February 2018, the claimant reported she had not taken her antidepressant in over two months due to hospitalizations (9F:15). Despite the lack of medication, she reported her mood had been up and down, and denied hopelessness or helplessness, anxiety, or panic (9F:15). She was noted to be "in very good spirits" (9F: 10).

Further, when evaluating the Step Two factors, the ALJ explained:

The claimant's mental impairments were not so severe that she required prolonged inpatient treatment, frequent emergency treatment, or significant mental health treatment. Rather, the overall record shows that her symptoms were generally well controlled with conservative, routine treatment, consisting of intermittent counseling and medications. Additionally, the claimant was frequently noted to be alert and oriented with normal attention span and concentration (lF:16; 2F:19, 25, 32; 4F:19; 9F:13; 12F:8, *for example).* Likewise, she was noted to be cooperative throughout the record (lF:16; 6F:2; 9F:2; 16F:6, 85, *for example).* By April 2018, the claimant reported she was "much happier with things" (12F:8). She continued to report improvement through June 2018 (13F). There is no evidence the claimant sought further treatment for her mental health symptoms after that.

Moreover, the claimant is able to perform a wide range of activities of daily living that are not consistent with someone who is disabled. For example, the claimant reported the ability to do "limited" driving, light cleaning, cooking, dishes, and grocery shopping. She reported the ability to dress, groom, and shower, but reported all were performed slowly (6F:1). She reported that she frequently attended her children's sporting events and grocery shops (5F:12). In February 2019, it was noted that she was able to exercise (18F:13). She also reported difficulty making appointments due to her "busy schedule" (3F:3). The fact that the claimant can perform these activities of daily living is not supportive of a finding of disability. Further, it appears that despite her impairments, she has engaged in a somewhat normal level of daily activity and interaction.

Ultimately, the burden of proof is upon the claimant to establish limitations that prevent performance of all work; however, she failed to satisfy that burden. Accordingly, for the reasons set forth above and considering the criteria enumerated in the regulations for evaluating the claimant's subjective complaints and limitations, I have determined that the record does not support her allegations. See

>*Social Security Ruling* 16-3p. I have also concluded that the frequency, severity, and duration of the claimant's symptomology are not as limiting as she has alleged and that she retains the ability to perform work activities commensurate with the limitations set forth above.

(Tr. 20). Plaintiff contends that the ALJ and did "not fully consider [P]laintiff's struggles with her activities of daily living, the location of her pain, aggravating activities and the effectiveness of [her] medication, etc." (R. 13, PageID# 926). However, throughout her argument, Plaintiff cites to the ALJ's statements regarding these factors to discredit them. (R. 13, PageID# 925-26). For example, Plaintiff asserts that "the ALJ did not fully discuss all of plaintiff's struggles with her daily living, and symptoms. What's more, the evidence upon which the ALJ relies to support his conclusions in fact support plaintiff's allegations." (R. 13, PageID# 925). Plaintiff does not support an argument that the ALJ failed to consider the factors set forth in SSR 16-3p, or that the ALJ failed to explain the credibility determination. Rather, Plaintiff disagrees with the ALJ's conclusions and credibility determinations, and invites the court to reconsider the underlying record evidence, identify records that support her assertions, and find the ALJ's assessment of other record evidence insufficient. However, the court's standard of review does not include assessing the evidence *de novo*, making credibility determinations, or weighing the evidence. *Brainard*, 889 F.2d 679, 681 (6th Cir. 1989).

Further, the Sixth Circuit has explained that an ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 U.S. Dist. LEXIS 121965, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). Moreover, although the ALJ's credibility determinations must be "based on a consideration of the entire case record[,]" *Rogers*, 486 F.3d at 247-248, the ALJ's decision need not explicitly discuss each of the

21

factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). "While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph." *Newsome v. Comm'r of Soc. Sec.,* No. 1:18-cv-2707, 2019 U.S. Dist. LEXIS 223785, at *29 (N.D. Ohio Dec. 5, 2019).

Reading the decision as a whole, it is clear that the ALJ considered several of the SSR 16-3p factors in assessing the credibility of Plaintiff's statements concerning the effects of her symptoms. Further, the ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence. "Because 'a reasonable mind might accept [the evidence] as adequate to support' his credibility determination, the court concludes that substantial evidence supports the ALJ's finding." *Norris v. Commissioner*, 461 Fed. Appx. 433, 2012 WL 372986, at *5 (6th Cir. 2012) (citing *Rogers*, 486 F.3d at 241).

**VI.     Conclusion**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/*David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 27, 2021